IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAL ISLEY, : | | |
| Plaintiff, : | | CIVIL ACTION |
| : | | |
| v. : | | No. 15-3082 |
| : | | |
| AKER PHILADELPHIA SHIPYARD, INC. : | | |
| Defendant. : | | |

**MCHUGH, J.**                                                                                                                                             **JUNE 8, 2016**

## MEMORANDUM

In this employment discrimination case, Plaintiff Jamal Isley alleges that he was terminated from his job as a welder for Defendant Aker Philadelphia Shipyard, Inc. in retaliation for actions he took that were protected by the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 1981 (Section 1981), and the Pennsylvania Human Relations Act (PHRA). Defendant has moved for summary judgment on these claims. For the reasons that follow, I will partially grant Defendant's motion.

### I.    Summary of the Allegations and Record

Many of the basic facts in this case are undisputed, and because I am now considering Defendant's Motion for Summary Judgment, I "present and consider the facts in the light most favorable to [P]laintiff[]." *Kaucher v. County of Bucks*, 455 F.3d 418, 420 (3d Cir. 2006).

Plaintiff is an African American male. First Amended Complaint (FAC) at ¶ 10. Defendant hired him as a welder in February 2006. *Id.* at ¶ 11. Plaintiff asserts that in December 2013 or January 2014, he complained about offensive racially discriminatory language that was "being used in the workplace." FAC at ¶¶ 12–13. Defendant disputes whether there is any evidence Plaintiff heard or complained about racial remarks. Def. Mem. Supp. Summ. J. at 2–3.

According to Plaintiff, he was transferred to work a night shift shortly after he made these complaints.  Pl. Resp. to Summ. J. at 3; Ex. O to Pl. Resp. to Summ. J. (indicating shift change to second shift for Jamal Isley).

On or around February 6, 2014, Plaintiff suffered an injury to his finger while at work.  FAC at ¶ 15.  He informed management and returned to work.  Plaintiff claims that he requested "temporary, light-duty assignment in the Tool Room" but was denied.[1]  FAC at ¶ 17–18.  Several days later, the finger injury had grown worse; Plaintiff took leave and opened a workers' compensation claim.  FAC at ¶ 19.  In conformity with standard procedure for responding to workplace injuries, "Defendant's management instructed Plaintiff to report to Defendant's third-party medical provider for a drug test in connection with Plaintiff's on-the-job injury."  FAC at ¶ 22.  Plaintiff did not take the drug test when it was ordered, although Plaintiff maintains that he could not report for the drug test because the testing facility was closed due to snow.  FAC at ¶ 23–24.  On February 15, 2014, Defendant terminated Plaintiff's employment for refusing to take the drug test.  FAC at ¶ 25.  The parties appear to disagree about whether Plaintiff could have taken the drug test and complied with Defendant's post-accident drug test policy.

Defendant reinstated Plaintiff to his position in March or April of 2014 on the condition that he sign a "last chance agreement."  FAC at ¶¶ 27–28.  Plaintiff alleges that before returning to work, he again complained of racial and disability discrimination to management.  FAC at ¶ 31.  In April, 2014, the Equal Employment Opportunity Commission ("EEOC") sent Defendant a notice that Plaintiff had filed a race and disability discrimination charge against it.  Ex. II to Pl. Resp. to Mot. Summ.  J.  In July, 2014, Defendant terminated Plaintiff's employment for the second time.  The basis of the termination was Defendant's assertion that

---

[1] Plaintiff asserts that "Caucasian employees were permitted to work within the tool room."  FAC at ¶ 18.  This allegation related to the discrimination claims that Plaintiff voluntarily abandoned.

2

Plaintiff failed to follow a safety protocol requiring he tag the gas line on which he was working. FAC at ¶¶ 35–36.  Plaintiff disputes that he violated any safety protocol.  FAC at ¶ 37.

Plaintiff argues that his two terminations were "due to his race and/or complaints of discrimination."  FAC at ¶ 42.  He also asserts that he was subjected to retaliation related to his finger injury.  Plaintiff asserts that both terminations were "due to … requests for and utilization of medical accommodations; and/or … complaints of discrimination."  FAC at ¶ 48.

Plaintiff filed this lawsuit in June 2015.  The First Amended Complaint included five substantive counts alleging racial and disability discrimination and retaliation, as well as failure to accommodate, in violation of Title VII, 42 U.S.C. § 1981, the ADA, and the PHRA.  Defendant filed a Motion for Summary Judgment, and in his Response, Plaintiff voluntarily abandoned his claims for race and disability discrimination, leaving only his retaliation claims.  Pl. Resp. to Mot. Summ. J. at 6, n.5.

**II.     Standard of Review**

Defendant has filed a Motion for Summary Judgment under Federal Rule of Civil Procedure 56.  The rule directs a court to dismiss claims "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  When the party that does not bear the burden of proof at trial is the moving party in a motion for summary judgment, the movant "may meet its burden … by showing that the nonmoving party's evidence is insufficient to carry" its burden at trial.  *Kaucher v. County of Bucks*, 455 F.3d at 423 (internal citations omitted).  In evaluating the Motion, I "view the record in the light most favorable to the [non-moving party] and draw all reasonable inferences in [its] favor."  *Id.*

3

### III. Disability Retaliation

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citations omitted). Then,

> [i]f an employee establishes a prima facie case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. … If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.

*Id.* at 500–01.

As I read the allegations, Plaintiff's claim is based on two actions that were purportedly protected conduct under the ADA. First, Plaintiff contends that his request for light duty work after injuring his finger was a request for a reasonable accommodation of a disability and therefore protected conduct. Defendant counters that Plaintiff's "purported request for accommodation … fails to support his retaliation claim because his finger injury was temporary" and not the kind of injury that qualifies him for protection under the ADA. Def. Reply Supp. Summ. J. at 3. I agree.

To receive retaliation protections under the ADA, a person need not have a qualifying disability. *Krouse*, 126 F.3d at 502. "[T]he ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA." *Id.* Although a person need not have a qualifying disability to receive the protections of the ADA's retaliation provision, the requester must have "a 'reasonable, good faith belief that [he] was entitled to request the reasonable accommodation." *Sulima v.*

4

*Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010) (citing *Williams v. Philadelphia Housing Auth. Police Dept.*, 380 F.3d 751, 759 n.2 (3d Cir. 2004)).  In *Sulima*, the Third Circuit found that an employee who had an apparently temporary impairment due to the side effects of medication could not claim retaliation on the basis of a request for an accommodation of his temporary impairment.  *Id.*  Likewise, here, there is no evidence that Plaintiff believed his finger injury was anything other than a temporary condition.  Plaintiff's request for an accommodation for his temporary injury was not protected conduct, and he cannot therefore support a retaliation claim based on that request.

Second, Plaintiff contends that his EEOC filing charging Defendant with discriminating against him because of his injury was protected conduct.  Defendant accepts that "for purposes of this Motion … Isley can establish the first two elements of the *prima facie* case," and argues Plaintiff's "claim still fails because he cannot establish a causal connection between his protected activity and his termination."  Def. Mem. Supp. Mot. Summ. J. at 29.  In Defendant's view, if Plaintiff's April EEOC charge alleging disability discrimination was protected activity, then the decision to terminate him in July was remote in time and "Isley's failure to follow safety procedures while subject to a last chance agreement also severs the causal chain."  Def. Mem. Supp. Mot. Summ. J. at 31.  Plaintiff asserts the existence of a causal connection by arguing that there is a factual dispute about whether Plaintiff actually engaged in the misconduct for which Defendant terminated him.  Pl. Resp. to Mot. Summ. J. at 10.  According to Plaintiff, if a jury in the first instance were to believe Plaintiff that no misconduct occurred, then a jury could infer Plaintiff's EEOC complaint was the actual cause of the termination.

Plaintiff's argument combines two distinct steps of the retaliation burden-shifting framework: causal connection and pretext.  Admittedly, case-law on retaliation holds that when a

plaintiff shows that an employer's proffered reason for taking an adverse action is false, a jury can conclude that the proffered reason was not the real reason. *Fuentes v. Perksie*, 32 F.3d 759, 764 (3d Cir. 1994). But before a plaintiff can defeat summary judgment by showing "pretext," a plaintiff must first complete his *prima facie* case by showing there is a basis for inferring that it was his protected activity that caused the adverse employment action. Plaintiff here has not satisfied this requirement. There must be "some evidence, direct or circumstantial, from which a factfinder would reasonably … believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Shaner v. Synthes*, 204 F.3d 494, 501 (3d Cir. 2000) (citation omitted). Several months passed between Plaintiff's April 2014 EEOC charge and his termination in July, 2014. The length of this time period does not, by itself, defeat Plaintiff's claim, and I also find no other evidence of animus against Plaintiff based on his disability in the record. "[T]he passage of a long period of time between protected activity and an alleged retaliatory action weighs against a finding of a causal link where there is no evidence of retaliatory animus during the intervening period." *Id.* at 505 (3d Cir. 2000). Plaintiff, I conclude, has not satisfied the *prima facie case* of his ADA retaliation claim based on his EEOC filing.

For these reasons, I find that Defendant is entitled to summary judgment on Plaintiff's disability retaliation claims.

**IV.     Race Retaliation**

Plaintiff "alleges that he was terminated on two (2) separation [sic] occasions (February and July of 2014) in retaliation for his complaints of race discrimination to varying levels of management and ultimately to the EEOC …" Pl. Resp. Mot. Summ. J. at 5–6.

The elements of a race retaliation claim are the same as the elements of Plaintiff's disability retaliation claim.  Plaintiff must establish a prima facie case of retaliation, which Defendant may counter by offering a legitimate justification for the adverse action it took against Plaintiff, and Plaintiff must produce evidence that Defendant's justification was pretextual. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–42 (3d Cir. 2006).

Plaintiff has established a *prima facie* case of retaliation.  First, Plaintiff engaged in activity protected against retaliation.  In December of 2013 and 2014, Plaintiff avers that he complained to his supervisors of racially offensive remarks in the workplace.  *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990); *Speed v. WES Health Sys.*, 93 F.Supp.3d 351, 356 (E.D. Pa. 2015) (informal complaints to management are protected conduct under Title VII). He also included claims of racial discrimination in his later-filed EEOC charge.   Defendant argues that I should not consider Plaintiff's uncorroborated claims that he complained of racial hostility.  I disagree.  Plaintiff's testimony that he made complaints of discrimination is neither speculative nor conclusory, but is straightforward testimony about Plaintiff's own conduct.  *See Solomon v. Soc'y of Auto Engineers*, 41 F. App'x 585, 586 (3d Cir. 2002) (plaintiff's unsupported testimony about coworkers' actions towards him was insufficient to defeat summary judgment).

Plaintiff has demonstrated that Defendant took adverse actions against him.  The Complaint points to Plaintiff's two terminations.  In response to this motion, Plaintiff further contends that his transfer to the night shift shortly after he made his complaints was a retaliatory adverse action.  A change in shifts can be an adverse employment action.  *See Mondelewski v Pathmark Stores, Inc.*, 162 F.3d 778, 788 (3d Cir. 1998) ("Assigning an employee to an

undesirable schedule can be more than a 'trivial' or minor change in the employee's working conditions.").

As to the remaining element of a *prima facie* case, I find there is a sufficient basis for a causal connection between Plaintiff's protected conduct and the actions Defendant took against him. Plaintiff's shift change occurred very shortly after he purportedly made complaints to management, and the relatively short time period between Defendant's notice of Plaintiff's EEOC Complaint and Plaintiff's second termination further support this inference. I find that the timing of these events is sufficiently suggestive to permit inference of a causal connection. *See Krouse,* 126 F.3d at 503–04.

Defendant offers potentially legitimate non-discriminatory reasons for its actions against Plaintiff. With respect to Plaintiff's shift change, Stephen LaLumera, a production manager for Defendant, said in his deposition that Plaintiff was transferred "because at the time we had reduced manning levels, subcontractor manning levels, and we had to balance out the shifts." LaLumera Dep. at 30:7–11. Defendant also offers legitimate bases for both of Plaintiff's terminations. Defendant terminated Plaintiff first for failing to take a required drug test. It later rehired and terminated him again for failing to follow a safety procedure on the job.

Plaintiff counters with evidence that would permit a factfinder to disbelieve Defendant's justifications for its actions, allowing it to conclude that retaliation was the true motivation. *Krouse*, 126 F.3d at 501 ("the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action."). According to Plaintiff, his first termination—for failure to take a drug test—occurred after Plaintiff made every effort to take the test but was prevented from doing so by events including a snowfall that closed the testing facility. As to Plaintiff's second

8

termination, Plaintiff contends there is a factual dispute over whether Plaintiff engaged in the misconduct that justified his second termination, and he has produced statements of witnesses supporting his position. *See* Pl. Resp. Opp'n Summ. J. at 5; Ex. QQ to Pl. Resp. Opp'n Summ. J.

By my reading of the record, a factfinder could disbelieve Defendant's justifications for its actions and conclude that retaliation for Plaintiff's complaints to management was the real reason Defendant acted. *See VanStory-Frazier v. CHHS Hosp. Co., LLC*, 827 F. Supp. 2d 461, n.5 (noting that evidence to show causal connection in *prima facie* case can be relevant to showing prextext). A factfinder might, for example, conclude from the full set of facts in the record that Defendant found, or perhaps created, reasons to rid itself of an employee who had begun to complain of racial hostility on the workplace. This enough to create a triable issue of fact with respect to this claim.

### V.     Conclusion

For these reasons, Defendant's Motion for Summary Judgment will be granted as to Plaintiff's disability retaliation claim under the ADA and the PHRA and will be denied as to Plaintiff's race retaliation claim under Title VII, 42 U.S.C. § 1981 and the PHRA.

>        /s/ Gerald Austin McHugh
> United States District Court Judge